| JOHN B. WILHELM | |
| vs. | SEPTEMBER TERM, 1849. |
| WILLIAM WILHELM AND OTHERS, | |

[PARTITION OF REAL ESTATE UNDER ACT OF 1820.]

THE judgment of the commissioners to divide real estate, in regard to its susceptibility to be divided among all the heirs, though not absolutely conclusive, will not be disbursed without proof demonstrating error of judgment, or partiality, or some other good reason for disregarding it.

The provision of the 9th sec. of the act of 1786, ch. 45, prohibiting the commissioners when the land is not worth more than $15 per acre, from dividing it into shares of less than fifty acres, forms no part of the act of 1820, ch. 191, and was purposely dropped by the legislature.

The objection that two of the heirs at law who are infants, have no part of the inheritance given to them until after the death of their mother the widow, the parts allotted to them being encumbered with her dower for life, is a fatal objection to the return of the commissioners.

The right of election given to the eldest son by the act of 1820, ch. 191, is a valuable right, but has no existence and cannot be enforced unless the commissioners determine that the estate cannot be divided without loss and injury to all the parties, and their return to this effect is confirmed by the court.

Where lands are divided in specie under the act of 1820, the commissioners have no power to assign the widow a portion of the land, *in fee*, equal to her dower in the whole, for this would be in effect making her a co-heir.

[The bill, in this case, was filed for a partition of the real estate of John Wilhelm, deceased, among his heirs at law. The heirs at law were ten in number, and the commissioners decided that the land was capable of advantageous division into ten parts, and divided the same accordingly, making several of the lots to contain less than fifty acres. To this return some of the parties excepted, for the reasons stated in the following opinion of the Chancellor, delivered on the 18th of May, 1849.]

THE CHANCELLOR:

The objections of the complainant to the return of the commissioners resolve themselves into two. *First*, it is objected that the commissioners have divided the estate into too many parts, to the injury of the complainant and Eleanor and Charlotte Wilhelm. *Secondly*, that they have assigned to two of the heirs at law, who are minors, nothing for their present support, the parts allotted to them being encumbered with the dower of the widow for life.

The first objection I do not think well taken. The judgment of the commissioners in regard to the susceptibility of the estate to be divided among all the heirs, though perhaps not absolutely conclusive, is certainly entitled to great respect, and in the absence of proof demonstrating error of judgment or partiality, or some other good reason for disregarding it, should not be disturbed. In the language of the 8th section of the act of 1820, ch. 191, "the commissioners, or a majority of them, shall *adjudge and determine* whether the estate will admit of being divided without loss and injury to all the parties entitled," "and if they shall so adjudge and determine, then they shall divide and make partition fairly and equally in value between all the parties interested, according to their several just proportions," &c. The commissioners, in this case, have decided that the estate may be divided among all the parties

entitled, without loss or injury to any, and as there is no evidence other than that which is supposed to exist upon the face of their proceedings, I do not think the court should undertake to reverse their judgment. The provision found in the 9th section of the act of 1786, ch. 45, prohibiting the commissioners, when the land is not worth more than $15 per acre, from dividing it into shares of less than fifty acres, forms no part of the act of 1820, and, it is fair to presume, was purposely dropped by the legislature.

But the objection that two of the infant heirs at law have no part of the inheritance given them until after the death of their mother, strikes me as much more formidable. There is nothing to show that they have any means of support independently of this property, and if that be the case, it is obvious they might be subjected to the most serious inconvenience, if not to absolute destitution. In the case of *Bennett* vs. *Bennett*, 5 *Gill*, 463, decided by the Court of Appeals, at December term, 1847, the objection now under consideration was brought to the notice of the court, and although the opinion as delivered does not express the views of the court upon this particular point, it is understood that such an objection to a partition under the act of Assembly was entitled to much weight, if it did not render it altogether void. Such a partition was regarded as ineligible and not to be viewed with favor. The return, therefore, in this case, will not be ratified, but the Chancellor forbears at present from passing an order, as the parties may possibly see some mode of avoiding a new survey.

[Another return was then made by the commissioners, which was again excepted to, and upon these exceptions the Chancellor on the 14th of November, 1849, delivered the following opinion, in which the exceptions and the return and partitions made are sufficiently stated.]

THE CHANCELLOR:

This case is submitted upon the objections of John B. Wilhelm and others to the several returns of the commissioners,

without any evidence in support of the exceptions founded upon the alleged inequality of the partition in point of value, or that the land was divided into too many parcels, and I am, therefore, of opinion, for the reasons stated in the remarks of this court in May last, that the exceptions of this character are untenable, and must be overruled.

A good deal has been said in this case upon the subject of the right of election given to the eldest son by the act of 1820, ch. 191, and the case of *Chaney and wife* vs. *Tipton*, 11 *G. & J.*, 253, has been cited to show that it is a valuable right secured to certain heirs by the act referred to, which becomes vested by the death of the intestate, and which may pass to a grantee. It is true it is a valuable right, but it is equally true that it is a right which has no existence, and which cannot be enforced unless the commissioners appointed to make the partition shall determine that the estate cannot be divided without loss and injury to all the parties. It is only upon their making a return of their judgment to that effect, and upon the confirmation by the court of this return that the right of election as prescribed by the statute can be executed. If the commissioners return, that the land may be divided, and this return is approved of, the right of election has no existence. In this case, the commissioners have made such a return, and there being no evidence impeaching their judgment or conduct in any respect, the right of election under the act of Assembly has no existence.

The commissioners by their last return have made a division of the dower land, and have given out of it to each of the infant heirs for whom no provision, *in presenti,* was made by their first return a share equal to a child's part, and to the widow the residue thereof in fee simple. There is no proof showing the inequality of this partition, though two exceptions charge such inequality, and an opportunity was given the exceptants to introduce their proof. It must be assumed, therefore, that the judgment of the commissioners in this respect is correct, and the fact as they have stated in their return.

The assignment of this parcel of land to the widow in fee simple is urged as an objection, and I think it is a good one.

It is true, that upon general principles, a court of equity may award to a widow, relinquishing her right of dower in the lands of her husband a sum of money equivalent to that right when she has agreed that the land may be sold, and they have been sold clear of that incumbrance. *Maccubbin* vs. *Cromwell*, 2 *H. & G.*, 443. But that is when the heirs at law agree to a sale, or it becomes necessary to pay debts, or for some other purpose that the land should be sold, and the whole title derived from the ancestor passes. In such cases the advantage of selling an unincumbered title, and thereby benefiting the estate, is palpable, and no sound reason can be given why the widow should not have in money an equivalent for her interest in the land, the proceeds of which have been increased by her relinquishment to an amount at least equal to, and often greater than the sum awarded to her in lieu of her dower.

But this is a case in which a sale of the estate is not to be made. There is to be a partition of it in specie among the heirs at law, and it is proposed to carve out of it a portion equal to the widow's third for life in the whole, and give her that portion in fee simple. This would be in effect making her a co-heir with those whom the law makes the heirs of the deceased against their consent, and when many of them are minors and incapable of consenting. It is quite a different thing when the law or the necessities of the estate require the inheritance to be sold. Then the heirs at law are unavoidably deprived of the lands which descended to them, and must take their respective portions in money, if in the case of a sale to pay debts anything remains after the creditors are satisfied. The argument attempted here, however, proposes to foist in a new heir who shall participate with the rest in the inheritance, though the act to direct descents very clearly defines who shall be the heirs, and among whom the estate shall be divided. I am of opinion that this cannot be done, and my conviction is fortified by the fact that no precedent can be found for it.

It is stated in the argument of the solicitors for the parties who desire the return of the commissioners to be ratified, that they are authorized by the widow to surrender to her children

the reversion in the land allotted to her, and that she will put this surrender upon the record in a formal manner. Now, I cannot conceive of any valid objection to this arrangement by which the widow will get less than her dower interest in the whole estate. I must assume, and do assume, in the absence of proof to the contrary, that no injustice has been done to any of these parties by the commissioners. That they have received their fair proportions of the estate of their ancestor, and that the share allotted to the widow in fee simple is no more than an equivalent for her dower interest, and if so, what right have any of the parties to object if she willingly surrenders a portion of her share, thus taking less than the law would give her. She was entitled to one-third of the whole estate for life; she agrees to take less than a third for life, and to this I see no objection.

When the last survey has been passed by the examiner general, and the necessary act done to perfect the arrangement, a final decree will be passed.

ALEXANDER and McLEAN, for Complainants.
B. T. B. WORTHINGTON, for Exceptants.